IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AXIS HOSPITALITY, INC., an Illinois Corporation, and ROLF TWEETEN, an individual, | ) ) ) ) |
| Plaintiffs, | ) No. 08 C 7212 ) |
| v. | ) Judge Joan H. Lefkow ) |
| KEITH HANSON, an individual, | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiffs, Axis Hospitality, Inc. ("Axis Hospitality") and Rolf Tweeten, filed a five-count amended complaint against defendant, Keith Hansen, arising from his allegedly fraudulent conduct in connection with their purchases of membership interests in Alliance Hospitality Management, LLC ("Alliance").[1] The amended complaint alleges claims for violation of Section 10(b) of the Exchange Act (Count I); common law fraud (Count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") (Count III); breach of fiduciary duty (Count IV); and unjust enrichment (Count V). Hansen moves to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b), or in the alternative, to strike Counts III and IV pursuant to Rule 12(f). For the reasons discussed below, Hansen's motion [37] is denied.

**BACKGROUND**

Alliance is a hotel management company organized under the laws of Georgia. Hansen served as Alliance's Vice President of Finance, Chief Financial Officer and one of its directors from July 2005 to July 2008. On August 8, 2007, Axis Hospitality purchased a membership

---

[1] Jurisdiction is premised on the Securities Exchange Act of 1934 (referred to in the text as "Exchange Act"), codified at 15 U.S.C. § 78j(b), and 28 U.S.C. § 1331.

interest in Alliance. Tweeten purchased his 29% membership interest in Alliance on February 29, 2008 and currently serves as its chairman.² Plaintiffs allege that beginning in May 2007 and continuing through July 11, 2008, Hansen "intentionally and wilfully concealed Alliance's true financial condition and manipulated the books and records on a regular and on-going basis . . . . in order to artificially inflate the earnings and value of Alliance." Am. Compl. ¶ 23. Plaintiffs allege that Hansen made material misrepresentations and omissions in connection with the health care expenses of a group of hotels owned by Inland American Real Estate Trust, Inc. ("Inland") and managed by Alliance, referred to as the health care fraud, and in connection with Alliance's liabilities on contracts between it and Celeren Corporation ("Celeren"), referred to as the Celeren contacts fraud.

I.      **The Alleged Health Care Fraud**

Alliance provided a health care plan for employees who worked at a group of hotels owned by Inland. In accordance with its health care plan, Alliance paid a deductible in the amount of the first $75,000 of health care claims for each plan participant. Alliance was then to be reimbursed by Inland. Hansen was responsible for recording those expenses in an account maintained on Inland's books ("the health care account"). Plaintiffs allege that Hansen intentionally and willfully manipulated the balance of the health care account to artificially lower Inland's expenses and increase its profits. By overstating the profitability of Inland, Hansen artificially inflated Alliance's potential for future business from its hotels, and consequently, Alliance's apparent value. The Amended Complaint sets out ten allegedly false ledger entries in Inland's health care account which Hansen directed Laura Petersen, presumably an Alliance employee, to make between May 31, 2007 and June 30, 2008; the date, ledger entry number,

---

² Plaintiffs do not attach copies of the referenced purchase agreements to their Amended Complaint.

amount and method of communication is provided for each entry. *See* Am. Compl. ¶¶ 26-27. Plaintiffs allege that Hansen concealed these false entries, causing them to significantly overpay for their membership interests.

## II. The Alleged Celeren Contracts Fraud

The plaintiffs allege that Hansen, without performing his due diligence,[3] caused Alliance to enter into several contracts with Celeren, an energy management company, from August 1, 2007 to December 2007 to reduce energy costs for at least ten of the hotels managed by Alliance. Pursuant to the contracts, Alliance was to pay Celeren in advance for the hotels' estimated energy costs and Celeren was to pay the hotels' actual energy costs directly to the local energy utilities. Plaintiffs allege that Hansen became aware that Celeren was delinquent in paying the energy bill for the Hilton Garden Inn at Albany Airport on October 3, 2007.[4] On December 11, 2007, Hansen sent emails to two Celeren employees requesting confirmation that service for the hotel would not be interrupted and that Alliance's credit would not be negatively affected.[5] After learning that Celeren was delinquent in paying the energy bill incurred by the Hilton Garden Inn at Albany Airport, plaintiffs contend Hansen either learned that Celeren was delinquent in paying the bills incurred by twelve of Alliance's other hotels or intentionally and willfully refrained from inquiring as to whether Celeren was delinquent. Celeren ultimately filed for bankruptcy in September 2008, leaving Alliance to pay in excess of $500,000 to various utility companies.

---

[3] Specifically, plaintiffs claim that Hansen failed to run a credit check on Celeren, and that he either failed to discover, or disregarded the fact that Celeren was formed by several former Enron executives.

[4] On that date, Marc Fleischer, the general manager of the Hilton Garden Inn at Albany Airport, sent Hansen an email informing him that Celeren had failed to pay its bill from Suez Energy. Fleischer attached a copy of the letter sent from Suez Energy to the email. The letter stated that the hotel's utility contract would be terminated if payment were not made.

[5] It is unclear whether Celeren responded to Hansen's request.

3

Plaintiffs allege that despite his knowledge of Alliance's potential liability for the unpaid energy bills, Hansen concealed and failed to disclose this problem to Alliance's board and to plaintiffs prior to the time they purchased their membership interests. As with the alleged health care fraud, plaintiffs contend that Hansen's conduct artificially inflated the value of Alliance, causing them to overpay for their membership interests. Plaintiffs contend that Hansen's misrepresentations and omissions regarding the alleged Celeren contracts fraud were contained in Alliance's books and records, which they reviewed prior to purchasing their membership interests, and in a series of communications from July 25, 2007 to May 14, 2008 regarding Alliance's finances and budget. *See* Am. Compl. ¶¶ 40(A)-(J).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and draws all reasonable inferences in the plaintiff's favor. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Factual allegations must, however, be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-236 (3d ed. 2004)); *see also Ashcroft* v. *Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) (*Twombly* expounded the pleading standard for all civil actions). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Allegations of fraud, such as those contained in Counts I, II and III of the Amended Complaint, are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that the plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "Rule 9(b) should be applied with an eye toward fulfilling the Rule's underlying purposes: '(1) to inform the defendants of claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations.'" *Gelco Corp.* v. *Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002) (quoting *Fujisawa Pharm. Co., Ltd.* v. *Katpoor*, 814 F. Supp. 720, 726 (N.D. Ill. 1993)). As Hansen concedes, where the fraudulent scheme occurred over a period of time, the requirements of Rule 9(b) may be less stringently applied. Hansen's Reply to Plaintiff's Response at 4 (hereinafter, "Reply"); *see also Gelco*, 2002 WL 31875537, at *6.

**DISCUSSION**

**I.      Tweeten's SEC Rule 10b-5 Claim (Count I)**

In Count I of the Amended Complaint, Tweeten alleges a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("Rule 10b-5 "). Hansen argues Count I should be dismissed because Tweeten has failed to plead with particularity the circumstances constituting fraud, specifically

the time, content and materiality of the alleged misrepresentations that form the basis of his Rule 10b-5 claim. Hansen further argues that Tweeten fails to identify any false statement or omission made by Hansen with respect to the financial condition of the company. Rule 10b-5 provides

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artiface to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To establish a cause of action under this rule, the plaintiff must establish "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Caremark, Inc.* v. *Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). A false statement or omission is material "if a substantial likelihood exists that a reasonable investor would find [it] significant in deciding whether to buy or sell a security, and on what terms to buy or sell." *SEC* v. *LADAVAC*, 51 F.3d 623, 637 (7th Cir. 1995) (citations omitted) (internal quotation marks omitted).

Tweeten has sufficiently pled his claim under SEC Rule 10b-5. Tweeten identified ten allegedly false entries that Hansen directed be made to Inland's health care account from May 31, 2007 to June 30, 2008. *See* Am. Compl. ¶¶ 26-27. Tweeten also identified several emails he received from Hansen between July 25, 2007 and February 29, 2008, the date on which he purchased Alliance stock, regarding Alliance's value, budget, finances and his potential acquisition of Alliance stock. *See, e.g.*, *id.* ¶ 40(C), (D), (E), (G). Each of Hansen's emails is

alleged to have misrepresented or omitted information concerning Inland's true health care costs and Alliance's potential liability for the energy bills resulting from Celeren's failures to perform. Accordingly, the court finds that Tweeten has adequately pled the time and content of the ledger entries and emails.[6] Furthermore, Hansen has pled that the alleged misrepresentations and omissions were material because he would have either declined to purchase a membership in Alliance or purchased the stock only at a lower price. *See id.* ¶ 77. Although not specifically challenged by Hansen, the court finds that Tweeten has adequately pled the remainder of the elements of his Rule 10b-5 claim. Tweeten alleges that he relied on Hansen's alleged misrepresentations and omissions by, *inter alia*, reviewing Alliance's books and records prior to purchasing his membership interest. Tweeten likewise alleges that he was damaged by these misrepresentations and omissions because he paid an artificially inflated price for his membership interest. Because Tweeten has pled with specificity all of the elements of his SEC Rule 10b-5 claim, the court will deny Hansen's motion to dismiss Count I.

## II. Plaintiffs' Common Law Fraud Claim (Count II)

Hansen next challenges the sufficiency of plaintiffs' common law fraud claim. To plead common law fraud in Illinois, a plaintiff must allege "(1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement and (5) damage to the other party resulting from such reliance." *Soules* v. *Gen. Motors Corp.*, 402 N.E.2d 599, 601, 79 Ill. 2d 282, 37 Ill. Dec. 597 (Ill. 1980) (citations omitted); *accord Addison* v. *Distinctive Homes*,

---

[6] To the extent that Tweeten has failed to specify where the alleged misrepresentations and omissions occurred, the court finds that this defect is not fatal because, as Hansen concedes, the requirements of Rule 9(b) are relaxed when the alleged fraudulent conduct occurs over a period of time. *See supra* at 5. Moreover, many of the alleged misrepresentations and omissions in this case are contained in emails, the nature of which make location immaterial as long as the sender's identity is established.

7

*Ltd.*, 836 N.E.2d 88, 92, 359 Ill. App. 3d 997, 296 Ill. Dec. 673 (Ill. App. Ct. 1st Dist. 2005).

Hansen's primary argument in regard to Count II is that the plaintiffs have failed to satisfy Rule 9(b) because they do not state from whom Axis Hospitality purchased its membership interest or attach the relevant stock purchase agreements. Plaintiffs, however, are not required to attach the relevant agreements because they do not contend that the misrepresentations and omissions at issue were contained in their stock purchase agreements. Rather, they allege that they were made by Hansen, who during all relevant times is alleged to have been a member and principal of Alliance, and the person supplying the plaintiffs with the information relevant to their purchase of its stock.[7] Hansen also argues that plaintiffs have failed to plead the time, place and content of the alleged misrepresentations and omissions. This argument is unavailing, however,

---

[7] In his reply, Hansen argues that this omission is purposeful because Hansen never sold Axis Hospitality a membership interest in Alliance. Hansen attempts to prove these new facts by attaching a document entitled "Purchase, Sale and Redemption of Membership Interest in Alliance Hospitality Mgmt., LLC" and executed by Mitch Shaut, on behalf of a company named "Noble Shah Investment Group, Ltd.," Tweeten, on behalf of a company named "Axis Hansen LLC," and Hansen, on behalf of Alliance. As Hansen is aware, courts do not generally consider documents extraneous to the pleadings on a Rule 12(b)(6) motion to dismiss. *See Lease Resolution*, 128 F.3d at 1080 ("In response to an ordinary 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster. If a district court considers matters outside the pleadings, our procedural rules require that the motion shall be treated as one for summary judgment." (citations omitted) (internal quotation marks omitted)). Neither exception to this rule – where a court takes judicial notice of a matter of public record, *Lease Resolution*, 128 F.3d 1080-81, or where the complaint refers to the document attached by the defendant and the document is central to the plaintiffs' claim, *see Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) – applies in this case. The attached agreement is not a matter of public record, nor is it clear that the latter exception applies to non-contract claims, such as the common law fraud claim alleged here. *See generally ABN Amro, Inc.* v. *Capital Int'l Ltd.*, 2007 WL 845046, at *5-8 (N.D. Ill. March 16, 2007) (discussing cases where federal courts have considered documents attached to motions to dismiss non-contract claims). Moreover, even if it were appropriate for the court to consider matters extraneous to the pleadings on a motion to dismiss a claim of fraud, by first submitting the document as an attachment to his reply brief, Hansen has effectively deprived the plaintiffs the opportunity to contest its validity or to respond. *See Carter* v. *Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004) (new arguments raised for the first time in a reply brief are considered waived). Accordingly, the court will neither consider the facts contained in the document, nor the new arguments Hansen premises upon it.

for the reasons discussed in regard to Hansen's motion to dismiss Count I.[8] Accordingly, Hansen's motion to dismiss Count II will be denied.

### III. Illinois Consumer Fraud and Deceptive Business Practices Act Claim (Count III)

Hansen moves to dismiss Count III on the basis that plaintiffs lack standing to bring a claim under the CFA because they are not consumers within the meaning of that statute.[9] The CFA provides, in relevant part,

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce [is] . . . unlawful.

815 Ill. Comp. Stat. 505/2. Under the CFA, a consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Id*. 505/1(e). The term "person" includes a natural person or any corporation, company or business entity. *Id*. 505/1(c). Thus, where a corporation is the consumer of a business's product, it has standing as a consumer under the CFA. *Am. Roller Co., Inc.* v. *Foster-Adams Leasing, LLP*, 472 F. Supp. 2d 1019, 1022 (N.D. Ill. 2007). When the dispute involves two businesses that are not consumers, however, the proper test is "whether the alleged conduct involves trade practices addressed to the market generally or that it otherwise implicate consumer protection concerns." *Downers Grove*

---

[8] While Count I is brought by Tweeten only, the alleged misrepresentations and omissions upon which plaintiffs premise their common law fraud claim are identical.

[9] Alternatively, Hansen also argues that the allegations that underlie plaintiffs' CFA claim fail to meet the heightened pleading standards of Rule 9(b). Because the allegations underlying plaintiffs' CFA claim are the same as those underlying Counts I and II, and because the court has already determined that those allegations satisfy the pleading requirements of Rule 9(b), the court need only address Hansen's standing argument.

9

*Volkswagen, Inc.* v. *Wigglesworth Imps., Inc.*, 546 N.E.2d 33, 41, 190 Ill. App. 3d 524, 137 Ill. Dec. 409 (Ill. App. Ct. 1989) (citations omitted). This is known as the "consumer nexus test." *Am. Roller*, 472 F. Supp. 2d at 1022-23. Hansen argues that plaintiffs fail to plead facts which suggest a consumer nexus, *i.e.*, that his conduct was addressed to the market generally, or otherwise implicated consumer protection concerns.[10] As plaintiffs point out, however, neither Tweeten nor Axis Hospitality need plead a consumer nexus. Tweeten is a natural person, not a business, and therefore need not satisfy the consumer nexus test. Axis Hospitality, while a business, need not satisfy the consumer nexus test because it alleges that it was a direct consumer of Alliance's product, *i.e.*, that it did not purchase its stock in Alliance for the purpose of resale. *See* Am. Compl. ¶ 100; *see also ASI Acquisition, LLC* v. *Rayman*, No. 01 C 165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002) (plaintiff, a business, was a consumer within the meaning of the CFA when purchasing defendants' stock). Accordingly, Hansen's motion to dismiss Count III will be denied.

## IV.     Breach of Fiduciary Claim (Count IV)

Hansen argues that plaintiffs may not maintain a claim for breach of fiduciary duty against him based on conduct which occurred prior to the purchase of their respective membership interests. It is true that "[o]nly conduct after the establishment of an actual director-shareholder relationship will constitute breach of fiduciary duty." *CDX Liquidating Trust* v.

---

[10] To the extent Hansen argues in his reply that plaintiffs fail to state a claim under the CFA because stocks are not "merchandise" within the meaning of the CFA, the court will not consider this argument because it has been waived. *See Tennant Co.*, 383 F.3d at 678. The court notes, however, that whether stock and securities constitute merchandise within the meaning of the CFA is an unsettled question in this circuit. *Compare ASI Acquisition, LLC* v. *Rayman*, No. 01 C 165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002) ("[I]n this district, the term 'merchandise' as employed in the Consumer Fraud Act has been held to include securities." (citations omitted)), *with Am. Roller*, 472 F. Supp. at 1022 n.3 ("Stock and securities may be considered "merchandise" only when sold as a business's "product." (citations omitted)).

*Venrock Assocs.*, 411 B.R. 591, 601 (N.D. Ill. 2009) (citing *Premier Capital Mgmt., LLC* v. *Cohen*, No. 02 C 5368, 2008 WL 4378313, at *3 (N.D. Ill. Mar. 24, 2008)). Plaintiffs' breach of fiduciary duty claim explicitly states, however, that it is only premised upon Hansen's conduct that occurred "after each plaintiff respectively became a member of Alliance." Am. Compl. ¶ 106. Accordingly, Hansen's request to dismiss or strike plaintiffs' breach of fiduciary duty claim will be denied.[11]

## V.     Unjust Enrichment Claim (Count V)

Hansen contends that plaintiffs have failed to state a claim in Count V for unjust enrichment. In order to prevail on a claim for unjust enrichment in Illinois, the plaintiff must show either that (1) a benefit that should have been given to the plaintiff was mistakenly given to the defendant instead; (2) the defendant obtained a benefit through some type of wrongful conduct; or (3) the plaintiff had a better claim to the benefit than the defendant for some other reason. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (Ill. 1989). In this case, plaintiffs unjust enrichment claim is premised on the same fraudulent conduct underlying the other counts, the allegations of which the court has previously determined satisfy Rule 9(b). Plaintiffs claim that, as a result of that conduct, Hansen financially benefitted by causing plaintiffs to pay an artificially inflated price for Alliance's stock and by receiving large bonuses that he would not have otherwise received absent his allegedly fraudulent conduct. Thus, the plaintiffs have adequately stated a claim for unjust enrichment and Hansen's motion to dismiss Count V must be denied.

---

[11] To the extent Hansen's reply challenges the plaintiffs' breach of fiduciary duty claim for failure to plead with particularity, this argument has been waived and need not be considered. *See Tennant Co.*, 383 F.3d at 678.

## CONCLUSION AND ORDER

For the reasons discussed above, Hansen's motion to dismiss [37] is denied . Hansen has until February 15, 2010 to file an answer.


Dated: February 1, 2010            Enter: _____

                                                     JOAN HUMPHREY LEFKOW
                                                    United States District Judge